TRUSTEES OF THE GLAZIERS, AR-
CHITECTURAL METAL AND
GLASS WORKERS LOCAL UNION
NO. 27 WELFARE AND PENSION
FUNDS, Plaintiff–Appellee,

v.

Peter J. GIBSON, individually and
d/b/a Glass Masters, Ltd.,
Defendant–Appellant.

No. 03–2546.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 2004.

Decided April 20, 2004.

Steven F. McDowell, Donald D. Schwartz, Arnold & Kadjan, Chicago, IL, for Plaintiff–Appellee.

Peter J. Gibson, Cicero, IL, for Defendant–Appellant.

Before POSNER, RIPPLE, and EVANS, Circuit Judges.

### ORDER

Had he followed a different life path, Peter Gibson, of Westmont, Illinois, might well have been a terrific lawyer. But Gibson is not a lawyer, he's a glazing contractor. Yet he defended this suit himself, producing a brief and presenting an oral argument every bit as good as what most lawyers are able to do. We compliment him on his effort.

"Glazing," in broad terms, is skilled glass work involving tasks like cutting and fitting glass for doors and windows. The suit that Gibson is defending (he lost on

summary judgment in the district court) was prosecuted by the trustees of a welfare and pension fund (the formal name is the Glaziers, Architectural Metal and Glass Workers Local Union No. 27 Welfare and Pension Funds) for a union, the Glaziers, Architectural Metal and Glass Workers Local Union No. 27. Gibson ended up on the receiving end of the suit because he was a party to one too many collective bargaining agreements. Today we resolve Gibson's appeal from the district court's judgment.

Gibson, with his wife, formed a company, Glass Masters, Ltd., as a subchapter S corporation in 1992. The corporation was dissolved in 2000, and since that time Gibson has continued working as a glazing contractor under the name Peter Gibson d/b/a Glass Masters, Ltd. (We refer to both entities, collectively, as "Gibson.") The Fund brought this suit under ERISA in 2002 to recover contributions it claimed that Gibson owed under the collective bargaining agreements with the glaziers' union.

Gibson bound himself to successive collective bargaining agreements with the glaziers' union beginning in 1994 and extending through June 2003. In October 1997, he also executed a collective bargaining agreement (CBA) with an iron workers union. The two CBAs have overlapping coverage for glazing work.

When this dispute arose, a Fund auditor conducted a fringe benefit compliance audit with respect to two jobs (one at the Cermak Elementary School, the other at the Great Lakes Naval Base) Gibson performed between January 1, 1999, and July 31, 2002. The two jobs included work within the geographic coverage of the glaziers' CBA. Some 85 percent of the work done on the projects, the audit concluded, was work covered by the CBA with the glaziers' union. No contributions were made to the Fund for the work because Gibson believed he could assign, at his option, glazing work to the iron workers' union rather than the glaziers' union. Gibson made contributions to an iron workers' union benefit fund and he was not going to contribute to the fund benefitting the glaziers as well. The crux of this dispute, therefore, is whether the assignment of glazing work to members of the iron workers union excuses Gibson from making contributions to the glaziers' fund for the same work. The short answer, unfortunately for Gibson, is no.

ERISA obligates an employer to make contributions to a pension fund to which it is contractually obligated. § 515 of ERISA, 29 U.S.C. § 1145. Therefore, if the work done by Gibson's employees is work cognizable under the glazier CBA, Gibson is required to make contributions for that work unless the CBA clearly provides otherwise. See *Central States v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir.1989) (en banc). Gibson's CBA with the glaziers' union does not provide otherwise. Stated another way, if a CBA with X union directs that contributions to a designated fund must be made for hours worked on a job covered by the CBA, the fund can insist on payment even if the work is done by members of union X or by persons unaffiliated with any union. The Fund's claim is based on the terms of the CBA, not on principles of labor law. If the CBA provides that contributions to the Fund are to be made for glazing work, Gibson cannot avoid his obligations by assigning that work to nonunion members or, as here, members of a different union.

Gibson essentially admits that the work on the two questioned projects is covered by the glazier CBA. It is unfortunate that Gibson will now have to contribute to the funds of two unions, but he is in a pickle that he created. Gibson entered into

CBAs with two unions having jurisdiction to perform glazing work without designating (in the CBAs) which union members were to perform which work. The Fund, as we noted in *Gerber Truck,* is like a holder in due course in commercial law or a receiver for a failed bank. It does not have to divine which workers Gibson will select for a job. The clear terms of Gibson's CBA with the glaziers union requires contributions to the Fund for glazing work. The time to avoid paying double here was *before* the work was done by getting an agreement or a pre-work resolution of the dispute. After the work was done was too late. In short, the Gibson-glaziers' union agreement requires contributions to the Fund for all hours of work covered by the CBA without regard to union membership. Accordingly, the judgment of the district court must be AFFIRMED.